# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

RHAYNA ROSE JONES, et al.,

Plaintiffs,

v.

SUNBELT RENTALS, INC., et al.,

Defendants.

Case No. 22-cv-05954-AMO (PHK)

**ORDER RE: DISCOVERY DISPUTES REGARDING SUBPOENAS FOR DOCUMENTS ISSUED TO HEALTHCARE PROVIDERS**

Re: Dkt. Nos. 44, 89

Now before this Court is a joint discovery dispute between Plaintiffs Rhayna Rose Jones, Jacoby Jones, R.J. (a minor)[1], and J.J. (also a minor), on the one hand, and Defendant Sunbelt Rentals, Inc. ("Sunbelt"), on the other hand. [Dkts. 89, 44]. This dispute centers around Sunbelt's subpoenas seeking any and all medical and psychological records pertaining to all of R.J.'s medical and psychological conditions. *Id.* After the joint discovery dispute brief of the Parties was referred to the undersigned for decision, the Court invited the Parties to submit additional briefing after further meet and confer. [Dkts. 41, 43]. The Parties reported to the Court that they were unsuccessful in narrowing the issues and agreed that no additional briefing was required. [Dkt. 44]. Subsequently, the Court issued a tentative ruling on this dispute and heard oral argument from counsel on July 27, 2023. At the hearing, the Court provided the Parties the opportunity to submit additional exhibits, which were submitted by counsel for Sunbelt after the hearing. [Dkt. 107]. Having reviewed the Parties' joint discovery letter briefing, the supporting documents, the evidentiary and discovery materials submitted both before and after the hearing, and having heard

---

[1] Pursuant to Fed. R. Civ. P. 5.2(a), the Court refers to this co-plaintiff as R.J. because he is a minor.

United States District Court
Northern District of California

oral argument, the Court **DENIES-IN-PART** Sunbelt's motion to compel the production of documents in response to all three subpoenas, **GRANTS-IN-PART** Plaintiffs' request for a protective order, **ORDERS** the subpoenas quashed-in-part and modified, and **ORDERS** the issuance of a Protective Order to handle confidential medical information and information regarding minors going forward as discovery proceeds in this case and further directs the Parties with regard to the conduct of discovery as further discussed herein.

## I.      BACKGROUND

This is a wrongful death action filed by the named Plaintiffs, who are the heirs of decedent Jacoby Jones, Sr. *See* Dkt. 1. Germane to the instant dispute, minor co-plaintiff R.J. is represented by and through his Guardian ad Litem ("GAL"), La Rhonda Reddic ("Reddic"). *Id.* This action was removed to this Court on the basis of diversity jurisdiction from the Superior Court for the County of San Francisco. *Id.* This case was referred to the undersigned for this discovery dispute and all further discovery in this case. [Dkt. 38].

The gravamen of Plaintiffs' Complaint is that Defendants Sunbelt and DC Solar, Inc. ("DC Solar") are responsible for the death of Jacoby Jones, Sr. due to alleged negligence involving a motor vehicle collision occurring on September 5, 2020. *Id.* at 10, ¶ 1. Plaintiffs assert two causes of action under California law: (1) Negligence – Wrongful Death; and (2) Negligence – Survival Action. *Id.* at 13–15. Plaintiffs originally sought a variety of relief including: "general damages (also known as non-economic damages), including but not limited to, past and future physical, mental, and emotional pain and suffering" and "special damages (also known as economic damages), including but not limited to, past and future hospital, medical, professional, and incidental expenses as well as past and future loss of earnings, loss of opportunity, and loss of earning capacity[.]" *Id.* at 16–17. By Stipulation filed on August 11, 2023, the Parties agree that Plaintiffs are no longer seeking economic damages in this matter. [Dkt. 59].

The instant dispute concerns three subpoenas for documents issued by defendant Sunbelt to three healthcare providers for R.J. *See* Dkts. 91, 92, 94. These subpoenas seek essentially all medical and psychiatric records of R.J. from these three entities, particularly (but not limited to)

psychiatric evaluations and treatment. *Id.* Plaintiffs have objected to these subpoenas on several grounds, and the Parties have met and conferred without reaching resolution of this dispute. *See, e.g.*, Dkts. 98, 100.

Sunbelt argues that Plaintiffs have put R.J.'s mental health at issue in this case, by alleging in discovery and at depositions (as support for Plaintiffs' damages contentions) that R.J. has experienced sadness, irritability, anxiety, and other similar feelings because of the loss of his father. Audio Recording: Hearing on Joint Discovery Dispute in *Rhayna Rose Jones v. Sunbelt Rentals, Inc.*, No. 22-CV-05954-AMO (PHK), at 2:20, 9:19 (July 27, 2023) (on file with the U.S. District Court in the Northern District of California) (Hereinafter "Discovery Hearing"). Sunbelt argues that the subpoenas for all of R.J.'s medical and psychiatric records from both before and since the fatal accident are relevant to Sunbelt's theory of rebuttal to Plaintiffs' damages theories. Discovery Hearing at 3:00. For the first time at the hearing on this matter, Sunbelt represented that they intend to call an as-yet-unidentified expert witness on the issue R.J.'s pre-existing mental health conditions (including particularly an allegation that R.J. suffers from schizophrenia) to allegedly rebut Plaintiff's non-economic damages claims. Discovery Hearing at 3:45, 5:40.

Sunbelt argues that Plaintiffs waived applicable privileges regarding information about R.J.'s medical and psychiatric treatment. *See* Dkt. 89. Specifically, Defendant Sunbelt argues that co-plaintiff R.J., through his GAL Reddic, waived the patient-physician and patient-psychotherapist privilege. *Id.* at 2. Defendant Sunbelt argues that, because of this subject matter waiver, Sunbelt is "entitled to all information relevant to Plaintiffs' claims including R.J.'s medical, psychological, and school records." *Id.*

Specifically, on April 6, 2023, GAL Reddic testified at deposition in response to Sunbelt's questioning "that following the loss of his father, her minor child R.J. was unable to finish tenth grade and received medical and psychiatric treatment." *Id.* Further, in response to a discovery request from co-defendant DC Solar, GAL Reddic "identified R.J.'s treating physicians, psychologists, and facilities." *Id.* Apparently in response to a discovery request, Reddic also produced six pages of R.J.'s medical and psychological records from Koinonia Family Services ("Koinonia") and Seneca Family of Agencies ("Seneca"). *Id.* In response to Sunbelt's demand,

apparently Plaintiffs supplemented their Initial Disclosures to add Koinonia, Seneca, Kaiser, and two named therapists.  *Id.*  Further, on May 2, 2023, R.J. apparently supplemented his response to California Superior Court Form Interrogatory No. 6.5 ("Have you taken any medication, prescribed or not, as a result of the injuries that you attribute to the INCIDENT?") to identify four medications. *See* Dkt. 89 at 3 n.1.   Sunbelt further argues that R.J. supplemented his response to Special Interrogatory No. 49 as follows:

> SPECIAL INTERROGATORY NO. 49: Please IDENTIFY all DOCUMENTS that support YOUR contention that SUNBELT "carelessly and negligently owned, leased, managed, maintained, controlled, entrusted and/or operated the SUBJECT VEHICLE so as to legally and proximately cause the collision with DECEDENT'S BIKE, causing DECEDENT'S untimely death and damages to PLAINTIFFS" as alleged in Paragraph 25 of YOUR complaint.
>
> SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 49: "Plaintiff has also sought mental health treatment as a result of the loss of moral support, comfort, care, care (sic), protection, training and guidance."

*See* Dkt. 1 at 119 (text of Special Interrogatory No. 49); Dkt. 89 at 3 n.1. [2]

Subsequently, Sunbelt issued subpoenas to R.J.'s medical and psychiatric care providers including Koinonia, Seneca, and Kaiser Permanente ROMI (Napa/Solano) ("Kaiser") and requested signature on Kaiser's authorization form for the release of all of R.J.'s medical records.  *Id.* at 2. Plaintiffs objected to the subpoena, resulting in the instant discovery dispute.  *Id.*

---

[2] The Court notes that Special Interrogatory No. 49 does not seek information relating to Plaintiffs' damages contentions and appears to be misidentified by Sunbelt in its portion of the Joint Discovery Letter to the Court.  The Court surmises that Sunbelt intended to refer to Special Interrogatory No. 50 which states: "Please state all facts upon which YOU base YOUR contention that "PLAINTIFFS have sustained and is entitled to recover damages pursuant to California Code of Civil Procedure Section 377.60 *et seq.* and based upon all other applicable statutes and case law, including but not limited to pecuniary losses, losses of support, services, parental and filial training, education, love, assistance, protection, care, comfort, society, solace, moral support, guidance, prospective inheritance, emotional distress, grief, and sorrow" as alleged in Paragraph 29 of YOUR complaint." [Dkt. 1 at 120].  In his original response to Special Interrogatory No. 50, R.J. objected and, subject to those objections, responded as follows: "Plaintiff's injuries include but are not limited to the following: loss of DECEDENT's love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance. Discovery and investigation are ongoing. Plaintiff reserves the right to supplement and/or amend this response."  *Id.*  The parties apparently do not dispute that R.J. supplemented an interrogatory response (whether Special Interrogatory No. 49 or 50, or some other) according to the text quoted by Sunbelt and reproduced above.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    LEGAL STANDARDS

In a diversity action such as this, the scope of permissible discovery is governed by federal law.  *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005) ("federal courts sitting in diversity must apply the Federal Rules of Civil Procedure"); *see also Carrasco v. Campagna*, 2007 WL 81909, at *1 (N.D. Cal. Jan. 9, 2007).  Under the familiar standards of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any "nonprivileged matter" that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery."  Fed. R. Civ. P. 26, advisory committee's notes to 2015 amendment.

State law governs privilege issues for federal courts sitting in diversity presiding over civil state law claims.  Fed. R. Evid. 501.  Rule 501 applies to all stages of proceedings, including discovery proceedings.  Fed. R. Evid. 1101(c).  As noted, the current action is a diversity case involving causes of action under California state law.  *See* Dkt. 1.  Thus, California law governs privilege issues raised by the instant dispute.

## III.    DISCUSSION

### A.    Relevance

Here, Defendant Sunbelt seeks all "information relevant to Plaintiffs' claims including R.J.'s medical, psychological, and school records," [Dkt. 89 at 2], and requests by its subpoenas "access to all records relating to R.J.'s medical and psychological conditions, before and after the accident, to determine whether [R.J.'s damages] claim has merit," *id.* at 4.  For example, Sunbelt's subpoena directed to Koinonia requests in part:

> 2.    Any and all DOCUMENTS consisting of, documenting, mentioning or related to any medical records, medical history, medical treatment, medical conditions, psychological and psychiatric records, psychological and psychiatric

United States District Court
Northern District of California

history, psychological and psychiatric treatment, psychological and psychiatric conditions, substance abuse, addiction, drug abuse, drug use, health issues and/or medications of PLAINTIFF in the DEPONENT's possession, custody or control, which are dated or were created on or after January 1, 2013.

\*\*\*\*

4.   Any and all DOCUMENTS IN YOUR possession which mention or relate to any services or treatment for PLAINTIFF provided by Dr. M. Kaye Johnson.

[Dkt. 91 at 7]. Sunbelt's subpoena directed to Seneca seeks documents using the same form of requests, with the exception of substituting the name of a different physician. *See* Dkt. 92 at 7–8.

Sunbelt's subpoena directed to Kaiser seeks more broadly worded categories of "any and all documents" relating to R.J.'s medical and psychiatric treatment:

1.   Any and all DOCUMENTS consisting of, documenting, mentioning or related to any medical records, medical history, medical treatment, medical conditions, health histories, patient information sheets, doctor notes, doctor's assistant notes, photographs, diagnoses, computer generated notes, phone messages, billing records, health issues and/or medications of PLAINTIFF in YOUR possession, custody or control, which are dated or were created from January 31, 2006 to the present.

\*\*\*\*

3. Any and all DOCUMENTS in YOUR possession which mention or relate to any services or treatment for PLAINTIFF provided by YOU from January 31, 2006 to the present.

4. Any and all COMMUNIATIONS between YOU and PLAINTIFF including but not limited to emails, notes of phone conversations, and text messages from January 31, 2006 to the present.

5. Any and all DOCUMENTS that reflects or REFER TO any mental health treatment of PLAINTIFF, including but not limited to psychological and psychiatric records, psychological and psychiatric history, psychological and psychiatric treatment, psychological and psychiatric conditions, substance abuse, addiction, drug abuse, drug use, chart notes, prognosis, diagnosis, plans of treatment and prescriptions, which are dated or were created from January 31, 2006 to the present.

[Dkt. 94 at 7–8].

Defendant Sunbelt argues that "the medical and psychological records of R.J. (and his blood relatives) are highly relevant to his contentions." [Dkt. 89 at 3]. Sunbelt argues further that

6

1  "Plaintiffs have tendered the issue of R.J.'s physical and mental condition" and that they are

2  "entitled to confirm the alleged disabilities and medical conditions, and to establish a timeline of

3  when those medical conditions and disabilities arose." *Id.*

4  In response, Plaintiffs argue that "Defendant, not Plaintiff has put this matter at issue.

5  Plaintiff has repeatedly confirmed California law does not permit recovery of emotional distress

6  damages in wrongful death actions. While Plaintiff certainly reserves the right to offer lay witness

7  testimony concerning R.J.'s response to losing his father, as evidence of the relationship they had,

8  Plaintiff has never had the intention of offering expert opinions or seeking damages for psychiatric

9  diagnoses." *Id.* at 4. Plaintiffs further argue that "[h]ere, Plaintiffs' filed a wrongful death lawsuit

10  seeking general damages for loss of love, compassion, comfort, care, moral support, guidance, and

11  protection. Plaintiff is not seeking emotional distress damages or economic damages for medical

12  consultations." *Id.* at 5.

13  Plaintiffs do not address the specific standards for lack of relevance under Fed. R. Civ. P.

14  26, but rather argue under California law that items sought in discovery "must be directly relevant

15  and essential to a just resolution of the action." [Dkt. 89 at 5 (citing *Britt v. Superior Ct.*, 20 Cal. 3d

16  844, 859 (1978)]. The scope of relevant discovery under Rule 26(b) is tied to the claims and

17  defenses asserted in the case, balanced against proportionality. *See In re Williams-Sonoma, Inc.*,

18  947 F.3d 535, 539 (9th Cir. 2020) (after 2015 amendment to Rule 26(b)(1), "the matter sought must

19  be 'relevant to any party's claim or defense.' Rule 26(b)(1). That change, however, was intended to

20  restrict, not broaden, the scope of discovery. *See* Rule 26(b)(1), advisory committee's notes to 2000

21  amendment; *see* [Rule 26(b)(1),] advisory committee's notes to 2015 amendment[.]").

22  Here, Plaintiffs have expressly disclaimed seeking emotional distress damages, economic

23  damages for medical consultations, and damages for psychiatric diagnoses. [Dkt. 89 at 4–5].

24  Further, at the hearing on this matter, counsel for Plaintiffs confirmed that Plaintiffs will not and

25  commit not to introduce any evidence from any medical expert witnesses or any fact witnesses who

26  may be treating physicians, therapists, or psychiatrists for R.J. Discovery Hearing at 35:20–38:20.

27  Plaintiffs have not inserted the entirety of R.J.'s medical and psychiatric history into the case but

28  have indeed explicitly and knowingly waived asserting damages theories based on these matters in

United States District Court
Northern District of California

this case going forward.  *Id.*

Additionally, Sunbelt's subpoenas seek all documents concerning not just R.J.'s "medical conditions" but also any "substance abuse, addiction, drug abuse, or drug use" of R.J.  *See* Dkts. 91 at 7; 92 at 7–9; 94 at 7–8.  Sunbelt has provided nothing to demonstrate that Plaintiffs have raised, much less connected to a damages theory, any alleged substance abuse, addition, drug abuse, or drug use on the part of R.J. as an issue in this case.  At the hearing on this matter, counsel for Sunbelt asserted without citation that there was deposition testimony (not provided to the Court) admitting to some unknown amount of alleged marijuana use by R.J. from fact witnesses and, from this, Sunbelt argued for the first time that the requested discovery of any drug use or substance abuse has become relevant to rebut the damages claims to allow Sunbelt to provide rebuttal expert testimony that drug use can allegedly exacerbate psychiatric conditions such as schizophrenia and can allegedly contribute to R.J.'s sadness and reaction to his father's death.  Discovery Hearing at 2:44. While Sunbelt's briefing focuses on its request for all medical and psychiatric treatment records of R.J., Sunbelt's requested relief is for the enforcement of the entirety of the subpoenas which inexplicably includes these requests relating to substance abuse.

As noted above, Sunbelt further asserted an unexplained argument that it is entitled to discovery of the "medical and psychological records of R.J. (*and his blood relatives*)."  [Dkt. 89 at 3 (emphasis added)].  At the hearing on this matter, counsel for Sunbelt argued for the first time that they intend to try to introduce expert testimony that schizophrenia has a genetically inherited component and that therefore discovery of the mental health histories of all of R.J.'s blood relatives is justified to substantiate this rebuttal theory as to damages, because (according to Sunbelt) the non-economic harm sought by R.J. was in some unexplained way the result of hereditary schizophrenia and not due to the death of his father.  Discovery Hearing at 2:20, 5:40.  To the extent Sunbelt interprets its subpoenas at issue to encompass not only R.J.'s medical and psychiatric records, but all the medical and psychiatric records of any and all of his blood relatives, that scope of discovery is not supported.  Sunbelt provides no indication that Plaintiffs have inserted the full medical and psychological records of all of R.J.'s blood relations into this case.

Accordingly, the scope and breadth of discovery as drafted in Sunbelt's subpoenas and now

United States District Court
Northern District of California

United States District Court
Northern District of California

1   sought by Sunbelt are not relevant to the claims asserted under Fed. R. Civ. P. 26(b)(1).  *Williams-*

2   *Sonoma*, 947 F.3d at 539–40.

3       Plaintiffs' response briefing in the Joint Discovery Letter states that "Plaintiff certainly

4   reserves the right to offer lay witness testimony concerning R.J.'s response to losing his father, as

5   evidence of the relationship they had[.]"  [Dkt. 89 at 4.].  Further, despite having had potential

6   objections available to Sunbelt's demands, Defendants argue that Plaintiffs did in fact supplement

7   their Initial Disclosures to identify Koinonia, Seneca, Kaiser, and two of R.J.'s treating therapists as

8   persons "likely to have discoverable information" under Fed. R. Civ. P. 26(a)(1)(A)(i).  [Dkt. 89 at

9   2].  However, at the hearing on this matter, counsel for Plaintiffs explained that they only added

10  those names to their Initial Disclosures because, apparently, Defendants insisted Plaintiffs do so.

11  Discovery Hearing at 34:00.  Further, counsel for Plaintiffs committed that the briefing and Initial

12  Disclosures are not an attempt to preserve the ability to somehow introduce lay witness testimony

13  from any therapist or medical practitioner of any kind, as opposed to expert medical witnesses.

14  Discovery Hearing at 35:20–38:20.  That is, Plaintiffs disclaimed expressly to the Court and on the

15  record that the scope of "lay witness testimony concerning R.J.'s response to losing his father" is

16  limited solely to family members and friends of the family (none of whom are medical professionals)

17  and that they have no intention to call or rely on as a witness any therapist or anyone from any of

18  the medical service providers for R.J.  [Dkt. 89 at 4].

19      Further, as Defendants have argued, Plaintiffs supplemented R.J.'s special interrogatory

20  response to state that "Plaintiff has also sought *mental health treatment as a result of* the loss of

21  moral support, comfort, care, care [*sic*], protection, training and guidance."  *Id.* at 3 n.1 (emphasis

22  added).  At the hearing on this matter, Plaintiffs similarly disclaimed seeking any claim for damages

23  based on any of R.J.'s mental health treatment.  Discovery Hearing at 40:05, 44:00.  Thus, Plaintiffs

24  have expressly represented to the Court and on the record that the scope of their damages claims in

25  this case will entirely exclude "mental health treatment as a result of the loss" of his father.

26      Defendants argue further that GAL Reddic produced "six pages of R.J.'s medical and

27  psychological records from Koinonia and Seneca, containing his psychiatric diagnoses."  [Dkt. 89

28  at 2].  In response to the Court's questioning, the Parties provided a copy of those six pages to the

Court after the hearing on this matter.  [Dkt. 107].  First, the Court notes that the first page is just a set of appointment-setting emails between GAL Reddic and a staff member at Koinonia, containing no medical or diagnostic information at all.  [Dkt. 108].  The remainder of the document is on Seneca letterhead and has no other connection with Koinonia (which is a separate legal entity from Seneca and was separately subpoenaed by Defendants).  *Id.*  The Court finds troubling Defendants' characterization in its brief of this document as "medical and psychological records from Koinonia."  Only after the Court asked at the hearing on this matter why Defendants did not previously submit a copy if it was of such import, and only after the Parties jointly provided a copy of this document after the hearing, was the inaccuracy of that description made plain to the Court.  To compound the error, Defendants expressly relied on this misleading description of this document to justify the subpoena to Koinonia, calling into doubt Defendants' credibility.  Accordingly, the Court finds that the subpoena issued to Koinonia is not within the reasonable bounds of relevance required by Rule 26.

Similarly, Defendants provide no evidentiary bases to find that the subpoena to Kaiser seeks relevant discovery under Rule 26.  Defendants' primary argument is that Kaiser was allegedly R.J.'s health care provider prior to the accident leading to his father's death, and according to Defendants, their putative expert witness would need all the medical records from Kaiser to compare R.J.'s mental condition before the accident to his mental condition after the accident.  Discovery Hearing at 2:20.  However, as noted, the six-page document nowhere mentions Kaiser, and Plaintiffs have disclaimed any intention or attempt to rely on any evidence or witness from Kaiser in pursuit of any theories of non-economic damages. Accordingly, the Court finds that the subpoena issued to Kaiser is not within the reasonable bounds of relevance required by Rule 26.

The remaining pages of this document are on Seneca letterhead and appear to be a preliminary treatment plan for R.J. dated December 14, 2022, (that is, two years after R.J.'s father's death).  [Dkt. 108].  The final page of this document states "Was a copy of the plan offered to the family?  No."  *Id.*  There is at least a question as to whether this document was communicated to R.J. or, if communicated to GAL Reddic, when it was communicated.  In the document, there are two "Unspecified" diagnoses listed on the first page, but one is listed as "Provisional" and the other

is unrelated to Defendants' assertions about alleged schizophrenia.  *Id.*  At the hearing on this dispute, counsel for Plaintiffs represented to the Court that Plaintiffs have no intention (and thus disclaim any ability) to rely on this document in any way to support their claims or theories of damages in this matter.  Discovery Hearing at 35:20–38:20.  Further, counsel for Plaintiffs represented to the Court that Plaintiffs have no intention to (and disclaim any ability to) have any fact witnesses testify as to the contents of this document in any way to support their claims or theories of damages in this matter.  *Id.*  Thus, Plaintiffs have expressly represented to the Court and on the record that the scope of their damages claims in this case will entirely exclude any medical, mental health, psychiatric, or therapeutic information reflected in this document.

Damages issues in this matter are narrowing as the case proceeds – the Parties have filed a Stipulation under which Plaintiffs disclaim all economic damages in this case.  [Dkt. 59].  Further, there appears to be no dispute between the Parties that, under California law, a Plaintiff in a wrongful death action is not entitled to damages for emotional distress.  *See Krouse v. Graham*, 19 Cal.3d 59, 72 (1977) ("California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action.").  And as discussed above, Plaintiffs have disclaimed in unconditional statements to the Court any damages theories or claims which rely on any medical costs, medical treatment, psychiatric treatment, therapist treatment, medical fact witnesses, medical expert witnesses, fact witnesses testifying as to medical issues, or the six-page document, [Dkt. 108], produced by GAL Reddic in discovery.  At the hearing on this matter, it became apparent that Plaintiffs have made these express disclaimers in order to shield the minor R.J. from intrusive and extensive discovery into the full history of his medical and psychological conditions.  Discovery Hearing at 33:00.

As noted, determining the proper scope of relevant discovery under Rule 26 is guided by the Parties' claims and defenses.  The Parties appear to agree that "California courts have uniformly allowed wrongful death recovery for loss of the society, comfort, care and protection afforded by the decedent." *Krouse*, 19 Cal.3d at 67.  None of these factors squarely put a plaintiff such as R.J.'s complete medical and psychological history at issue.  Because R.J. is barred under California law from seeking damages for grief and sorrow and because Plaintiffs' counsel has further disclaimed

United States District Court
Northern District of California

any attempt or ability to try to introduce medical or psychiatric evidence of R.J.'s conditions into the case going forward, Defendants' purported need for such discovery is unsupported.  Indeed, the Court has found no cases announcing a rule (and is hesitant to create a new rule) that, every time a party sought non-economic damages for wrongful death, that party's entire medical, mental, and psychiatric history (as well as drug use and the medical and psychological history of all blood relatives) became fair game and open for discovery to try to rebut damages.

Further, even if the Court assumes *arguendo* that R.J. suffers from extreme mental conditions which were exacerbated by the loss of R.J.'s father, as Defendants theorize, that alone does not make legally relevant R.J.'s entire medical and psychological history to discovery.  It is hornbook law that a defendant takes a plaintiff as they are (the so-called eggshell skull rule). *See* Rest.2d Torts § 461 ("The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.").  Discovery of R.J.'s complete psychiatric history would not rebut liability and would at most merely establish a context for evaluating damages.  Defendants appear to argue that, because R.J. or his family could testify that he was saddened by the loss of his father, such testimony should allow wide-ranging discovery into R.J.'s entire psychiatric history to allow a putative defense expert to opine that R.J.'s sadness was caused by mental illness instead.  While the Court makes no pre-judgment on whether the putative expert testimony posited by Defendants would even be admissible to rebut damages, as noted the law does not allow R.J. to recover damages for grief, and thus the Court is confident that the discovery sought is not justified under Rule 26.

Accordingly, the full scope of relevance demanded by Sunbelt ("all medical and psychological records of R.J." from all health care service providers unbounded by time, and including anything relating to any drug use, and further including all medical and psychological histories of all of R.J.'s blood relatives) is not appropriate, is not supported by the document, [Dkt. 108], or other evidence cited, is mooted by Plaintiffs' disclaimers of theories of damages relating in any way to R.J.'s mental condition or history and is overbroad.  The subpoenas to Koinonia and Kaiser, in particular, are not supported by sufficient evidentiary or legal grounds to show that they

1     seek relevant discovery.

2

3         **B.**     **Proportionality**

4         Under Fed. R. Civ. P. 26(b) as amended since 2015, the determination as to relevance is only

5     the first step of the inquiry.  While discovery directed to a relevant matter is allowed, that discovery

6     must also be "proportional to the needs of the case, considering the importance of the issues at stake

7     in the action, the amount in controversy, the parties' relative access to relevant information, the

8     parties' resources, the importance of the discovery in resolving the issues, and whether the burden

9     or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

10        As noted, Sunbelt's briefing makes clear that the subpoenas here seek "*all information*

11     relevant to Plaintiffs' claims including R.J.'s medical, psychological, and school records," [Dkt. 89

12     at 2 (emphasis added)], and Sunbelt seeks by its subpoenas "access to *all records relating to R.J]'s*

13     *medical and psychological conditions, before and after the accident,* to determine whether [R.J.'s

14     damages] claim has merit," *id.* at 4 (emphasis added).  As quoted above, Sunbelt's subpoenas

15     repeatedly seek in various formulations "any and all documents" related to "any medical records"

16     and "any psychiatric records" of R.J.  *See* Dkts. 91 at 7; 92 at 7–8; 94 at 7–8.

17        As noted, the Parties have filed a Stipulation under which Plaintiffs disclaim all economic

18     damages in this case.  [Dkt. 59].  And as noted, under California law, a plaintiff in a wrongful death

19     action is not entitled to damages for emotional distress, grief, or sorrow.  *See Krouse*, 19 Cal.3d at

20     72.  Further Plaintiffs have disclaimed emotional distress damages, economic damages for medical

21     consultations, and damages for psychiatric diagnoses.  [Dkt. 89 at 4–5].  And as discussed, Plaintiffs

22     have further disclaimed relying on fact or expert witnesses, or any medical records, relating to R.J.'s

23     medical or psychiatric history.  Discovery Hearing at 35:20–38:20.

24        In light of the narrowing of the damages theories remaining at issue in the case, the breadth

25     of Sunbelt's subpoenas (as drafted originally and argued by Sunbelt now) is neither proportional to

26     the needs of the case nor important in resolving the issues. *See Winet v. Arthur J. Gallagher & Co.*,

27     2020 WL 6449230, at *2 (S.D. Cal. Nov. 3, 2020) (request for production which sought "all

28     documents" concerning, evidencing, and reflecting party's sales is overbroad and not proportional

United States District Court
Northern District of California

to the needs of the case). Because there are no issues to be resolved on emotional distress, economic damages for medical consultations, and damages for psychiatric diagnoses, the subpoenas are by definition not important to resolving any such issues.

Further, Sunbelt's subpoenas direct to Koinonia and Seneca seek documents dating from January 1, 2013, to the present. *See* Dkts. 91 at 7 and 92 at 7–8. Sunbelt's subpoena direct to Kaiser seeks document dating from January 1, 2006. [Dkt. 94 at 7–8]. The decedent in this action (Jacoby Jones Sr.) was involved in a fatal motor vehicle accident on September 5, 2020. Plaintiffs objected to the temporal scope of the subpoenas during the meet and confer process and assert here that (if enforced) should be time-limited at least to the timeframe of 2018 to present. *See* Dkt. 89 at 6; *see, e.g.,* Dkt. 100 at 4, 8. Sunbelt argues that the 2013 starting date in the subpoenas is required because of the alleged change in R.J.'s medical and psychological condition before and after the loss of his father in September 2020. [Dkt. 89 at 4]. Sunbelt argues without explanation why seeking documents going back to 2006 are so important in resolving the issues here that the defendants "must have access to all records relating to R.J.'s medical and psychological conditions, before and after the accident, to determine whether this claim has merit." *Id.*

Additionally, as noted, Sunbelt's subpoenas seek all documents concerning R.J. going back to 2013 (for Koinonia and Seneca) and 2006 (for Kaiser) regarding not just his "medical conditions" but also "substance abuse, addiction, drug abuse, or drug use" of R.J. *See* Dkts. 91 at 7; 92 at 7–8; 94 at 7–8. R.J. is a minor, [Dkt. 89 at 2], and at the hearing on this matter the Parties indicated he is currently sixteen years old. Discovery Hearing at 32:10. Thus, in 2013 he was seven years old, and it appears Defendants selected 2006 as the start date because that was the year of his birth. Defendants provides no rationale or explanation as to how or why it is important to resolve issues in this case to request documents relating to "drug abuse" by a child or infant. Plaintiffs argue that there exists "[t]o date, *no testimony elicited by anyone* that R.J. has a history of substance use or abuse." [Dkt. 89 at 6 (emphasis in original)]. At the hearing on this matter, Defendants' counsel represented that other unidentified fact witnesses testified as to alleged marijuana use by R.J. and argued that this opens the door to discovery on drug abuse going back to infanthood. Discovery Hearing at 2:20. Further, Defendants argued at the hearing that R.J.'s alleged mental conditions

1    may have been exacerbated by marijuana or other unidentified drug use, and that the discovery is

2    required to determine the scope of any suspected drug abuse, to allow a putative defense expert to

3    opine that Plaintiffs' non-economic damages were either the result of (or should be reduced by the

4    impact of) such alleged drug abuse and not the loss of his father.  *Id.*

5         Plaintiffs argue that, with regard to subject matter scope, if the subpoenas are to be found

6    enforceable, they should be limited to "scope to information regarding diagnoses disclosed prior."

7    [Dkt. 89 at 6].

8         The extensive subject matter breadth, temporal scope, and requests for "any and all"

9    documents in Sunbelt's subpoenas are neither proportional to the needs of this case, nor important

10   to resolving issues in this case.  The full temporal scope of Sunbelt's subpoenas as drafted and

11   argued by Sunbelt now is facially not proportional to the needs of this case.  This is a wrongful death

12   case in which the parties dispute liability for the underlying alleged negligence resulting in

13   decedent's passing; the subpoenas seek information relating solely to one of the four co-plaintiffs'

14   possible damages theory.  Sunbelt provides insufficient explanation as to how such extensive, wide-

15   ranging, and temporally unlimited subpoenas are important to resolving the issues in this case.  *See*

16   Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment ("A party claiming that a

17   request is important to resolve the issues should be able to explain the ways in which the underlying

18   information bears on the issues as that party understands them.").

19        At the hearing on this matter, Defendants argued for the first time that quashing the proposed

20   subpoenas here would be violation of Defendants' due process rights.  Discovery Hearing at 5:10,

21   10:20.  Specifically, Defendants argued that, because Plaintiffs put R.J.'s mental state at issue, as a

22   matter of due process Defendants required (and indeed were entitled to) the discovery here to enable

23   Defendants to mount a rebuttal and defense to R.J.'s damages claims.  *Id.*  Defendants' assertions

24   here argue too much.  First, this Court has wide discretion to enforce the bounds of reasonable and

25   proportional discovery under the Federal Rules.  *Pryor v. L.A. Cnty. Dist. Att'ys Office*, No. CV 17-

26   7566-DSF (AGR), 2018 WL 1135635, at *6 (C.D. Cal. Feb. 26, 2018) ("The availability of

27   discovery is generally within a court's discretion and does not violate due process.").  Second,

28   application of the Federal Rules of Civil Procedure is inherently consistent with due process.  *See*

United States District Court
Northern District of California

15

*Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 465 (2000) ("The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees."). The Advisory Committee Notes to the 2015 amendments to Rule 26 indeed make clear that "provisions [on proportionality] were added 'to deal with the problem of over-discovery. The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse.'" Ultimately, it is the Court's duty to apply the Federal Rules to ensure proper discovery that is relevant and proportional is conducted. *Id.* ("The court still must limit the frequency or extent of proposed discovery, on motion or on its own, if it is outside the scope permitted by Rule 26(b)(1)."). Where the Court properly applies the Federal Rules to shape the proper scope of discovery in a matter, that is consistent with due process. If Defendants were correct in their due process arguments, then every time a court granted a motion to quash a subpoena or denied a motion to compel, the disappointed party would claim deprivation of due process rights. Notably, Defendants raised this argument at the hearing without citation to any supporting case law.

Accordingly, even if there were some limited scope of relevant discovery appropriately sought from the subpoenaed parties, that limited scope must be proportional to the needs of this case. As discussed below, the scope of the subpoenas is further impacted by Plaintiffs' assertion of applicable privileges.

### C.    Privilege

Under Rule 26(b), discovery properly extends only to non-privileged matters. As discussed above, because the causes of action are based on California state law and the Court is sitting in diversity, the Court applies California law as to issues of the two privileges asserted by Plaintiffs (patient/physician and patient/psychotherapist). Fed. R. Evid. 501. California law recognizes a medical records privilege allowing a patient to refuse to disclose, or prevent another from disclosing, confidential communications with a physician of psychotherapist in the course of the physician-client or psychotherapist-client relationship. *See* Cal. Evid. Code §§ 990, *et seq*. Further, "The state

Constitution expressly grants Californians a right of privacy, which extends to their medical records." *Grafilo v. Cohanshohet*, 32 Cal. App. 5th 428, 436 (2019).

### 1. Plaintiffs Satisfy the Procedural Requirements for Asserting The Physician-Client and Psychotherapist-Client Privileges

While California law governs the substantive privilege matter, federal law controls the threshold procedural requirement of whether a party properly asserted privilege as a bar to discovery. *Johnson v. Nw. Airlines, Inc.*, 2009 WL 839044, at *3 (N.D. Cal. Mar. 30, 2009). A party asserting a privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

Here, Plaintiffs meet this threshold procedural requirement. First, R.J. adequately asserted the patient-client and psychotherapist-client privileges in objecting to the subpoenas (including Plaintiffs' objection letter attached to as part of the formal objections to the subpoenas). *See* Dkt. 100 at 4, 8; Dkt. 89 at 5–4. Second, the record of the meet and confer correspondence between the parties demonstrates that Plaintiffs adequately described the nature of the documents and communications which were the subject of the asserted privileges. [Dkt. 100 at 4, 8]. The parties do not dispute that the documents and communications at issue would constitute R.J.'s medical and psychiatric records from the subpoenaed medical and psychiatric care providers. [Dkt. 89 at 2]. Thus, Plaintiffs have satisfied the procedural requirements for properly raising and asserting the Physician-Client and Psychotherapist-Client Privileges.

### 2. Defendants Have Failed to Show that Plaintiffs Waived Applicable Privileges

Defendants do not dispute that the physician-client and psychotherapist privileges apply to the documents sought by the three subpoenas. Rather, Defendants affirmatively seek privileged communications because, as they argue, Plaintiffs allegedly waived any such privileges. [Dkt. 89 at 4]. Under Cal. Evid. Code § 912, there is a waiver of privilege "if any holder of the privilege,

1    without coercion, has disclosed a significant part of the communication or has consented to

2    disclosure made by anyone."  "A 'significant part of the communication' is a matter of judicial

3    interpretation; however, the scope of the waiver should be determined primarily by reference to the

4    purpose of the privilege." *Fish v. Superior Ct.*, 42 Cal. App. 5th 811, 819 (2019)

5           In addition to waiver under § 912, the patient-litigant doctrine precludes one who has placed

6    their physical condition or mental state at issue from invoking the privilege as to those issues put at

7    issue.  Cal. Evid. Code §§ 996, 1016.  The scope of the doctrine is not unbounded, however.

8           Defendants argue that "Plaintiffs have tendered the issue of R.J.'s physical and mental

9    condition."  [Dkt. 89 at 3].  As a result, Defendants argue the patient-litigant exception to the

10   privilege applies.  *Id.*  Further, Defendants argue that "the psychotherapist-patient privilege can be

11   waived by, as here, a significant part of the privileged communication has already been disclosed

12   by Plaintiffs themselves."  *Id.* (emphasis omitted).

13          As discussed above, Plaintiffs state flatly that they "do not intend on affirmatively relying

14   on psychotherapist-patient communications or intend to call a psychotherapist as an expert witness."

15   [Dkt. 89 at 6].  Plaintiffs also state that "Plaintiff has never had the intention of offering expert

16   opinions or seeking damages for psychiatric diagnoses." *Id.* at 4.  As discussed regarding the scope

17   of relevance above, the Court has found that Plaintiffs have disclaimed a damages theory based on

18   emotional distress, economic damages for medical consultation, or for psychiatric diagnoses.  *Id*.

19   And, Plaintiffs have further disclaimed any intent or ability to rely on any testimony of any expert

20   or fact witness on R.J.'s mental health or history, and further disclaimed any reliance on any

21   documents from any of the three health care providers.  Discovery Hearing at 35:20–38:20.

22          Accordingly, the Court finds Plaintiffs have not put R.J.'s physical condition or mental state

23   at issue sufficiently to either fall within the patient-litigant exception to privilege or to constitute a

24   waiver of the applicable privileges.  Plaintiffs are not seeking emotional distress damages.  Dkt. 1

25   at 15, ¶ 29; *cf. Davis v. Superior Court*, 7 Cal. App. 4th 1008, 1017 (1992) (in personal injury action,

26   plaintiff makes no claim for damages for "mental and emotional distress" apart from her claim for

27   damages for pain and suffering and plaintiff's mental state is not put at issue).  The fact that Plaintiffs

28   have disclaimed damages for emotional distress and have not asserted a separate claim for emotional

United States District Court
Northern District of California

18

distress militate in favor of finding no exception from or waiver of the applicable privileges here. *See Kim v. Interdent Inc.*, 2010 WL 1996607, at *2 (N.D. Cal. May 18, 2010) (no waiver of psychotherapist-patient privilege under Cal. Evid. Code. 1016 where plaintiff had no separate claim for emotional distress and only seeks general damages).

Moreover, Plaintiffs here have expressly waived the right to submit psychotherapist expert witness testimony or any expert testimony on psychiatric diagnoses, and further waived the right to rely on any of R.J.'s psychotherapist-patient communications. [Dkt. 89 at 6]. These factors, as well, militate in favor of finding no waiver of the asserted privileged. *See Kim*, 2010 WL 1996607 at *2 (finding no waiver of privilege where plaintiff will not be presenting any expert testimony about emotional distress).

While Plaintiffs have served an interrogatory response which states the fact that R.J. has sought mental health treatment as a result of the loss of moral support and care from his father, that statement was disclaimed at the hearing and, even if left in the record, the statement alone contains no physician-patient or psychotherapist-patient communications and thus cannot serve as the basis for a waiver. [Dkt. 89 at 3 n.1]. The disclosure of treatment is not enough to constitute a disclosure of a "significant part of the communication" warranting a waiver of the privilege. *San Diego Trolley, Inc. v. Superior Ct.*, 87 Cal. App. 4th 1083, 1088 (2001) (plaintiff's deposition testimony that she was being treated for anxiety by a psychiatrist is insufficient to constitute waiver of privilege); *see also In re M.L.*, 210 Cal. App. 4th 1457, 1474–75 (2012) ("the Supreme Court has 'made it clear that the mere disclosure of the *existence* of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver.' Even when a patient has revealed the *purpose* of psychiatric treatment, no waiver of the privilege occurs. 'There is a vast difference between disclosure of a general description of the object of . . . psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy.') (citations omitted, emphasis in original). At the hearing on this matter, Defendants were unable to cite to a disclosure by Plaintiffs of an actual communication by R.J. during psychotherapy and were unable to identify any specific privileged communication that was disclosed. Discovery Hearing at 12:30–16:00.

United States District Court
Northern District of California

Similarly, GAL Reddic's deposition testimony that R.J. received medical and psychiatric treatment after the loss of his father is not itself a disclosure of the contents of any privileged communications. [Dkt. 89 at 2]. Defendants quote no testimony from GAL Reddic's deposition in its briefing and do not quote any GAL Reddic testimony which repeats or discloses any privileged communications between R.J. and his therapists. *Id.* The parties provided a copy of GAL Reddic's deposition transcript to the Court after the hearing in this matter, *see* Dkt. 109, and Defendants did not cite to (and the Court did not find) any testimony from GAL Reddic which disclosed a specific physician-patient privileged communication between R.J. and any therapist. *See Roberts v. Superior Ct.*, 9 Cal. 3d 330, 340 (1973) ("There is, of course, a vast difference between the disclosure of a general description of the object of her psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy.").

Further, while GAL Reddic produced the document from Seneca discussed above, [Dkt. 108], Defendants were unable to identify any statements in that document which are themselves psychotherapist-patient communications, [Dkt. 89 at 2]. In its brief, Sunbelt does not quote any actual language from that document as the basis for any alleged waiver but relies merely on the fact that they were produced alone. [Dkt. 89 at 3]. Disclosing the purpose of psychiatric treatment does not amount to a waiver. *San Diego Trolley*, 87 Cal. App. 4th at 1092–93 ("Even when a patient has revealed the purpose of psychiatric treatment, no waiver of the privilege occurs.").

Additionally, Sunbelt's reliance on Plaintiffs' supplementing their Initial Disclosures to include the names of the subpoenaed healthcare providers and the names of R.J.'s therapists by itself does not waive or disclose any part (much less a significant part) of any privileged communications. [Dkt. 89 at 2]. The "disclosure of the existence of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver." *Roberts*, 9 Cal. 3d at 340. Similarly, Sunbelt's argument that R.J. provided a supplemental interrogatory response which identify his medications is legally insufficient to waive the psychotherapist-client privilege. *Fish*, 42 Cal. App. 5th at 820 (plaintiff's disclosure to law enforcement "that his psychotherapist had prescribed certain antidepressant and antipsychotic medications is legally insufficient to waive the privilege that attaches to Fish's communications with his therapist about

those prescriptions and diagnoses.").

As noted, Defendants argued that the waiver of privilege occurred because Plaintiffs put R.J.'s mental health at issue such that Defendants need the discovery to enable an undisclosed expert witness to opine as to R.J.'s mental health both before and after the accident. However, simply because Plaintiffs are seeking non-economic damages for wrongful death does not create a waiver of privilege as to R.J.'s entire mental health history and current conditions. The California Supreme Court's analysis of privilege in regard to personal injury claims is instructive:

> We must of course recognize that any physical injury is likely to have a "mental component" in the form of the pain suffered by the injured person, at least insofar as he is conscious of the physical injury. Presumably, the perception of pain from a particular injury will vary among individuals. Thus, in every lawsuit involving personal injuries, a mental component may be said to be at issue, in that limited sense at least. *However, to allow discovery of past psychiatric treatment merely to ascertain whether the patient's past condition may have decreased his tolerance to pain or whether the patient may have discussed with his psychotherapist complaints similar to those to be litigated, would defeat the purpose of the privilege established by section 1014*, supra."

*Roberts*, 9 Cal. 3d at 339 (emphasis added).

Furthermore, the scope of waiver argued by Sunbelt further undercuts Sunbelt's waiver arguments. As discussed, Sunbelt argues that the alleged waiver of privileges by Plaintiffs justifies discovery into the entirety of all privileged communications for all of R.J.'s medical and psychiatric history going as far back as 2006, with no limitations on temporal or subject matter scope. [Dkt. 89 at 4]. However, the "psychotherapist-patient privilege is broadly construed in favor of the patient, while exceptions to the privilege are narrowly construed." *Fish*, 42 Cal. App. 5th at 818. Similarly, with respect to the patient-litigant exception to privilege, that doctrine does not negate a patient's privilege with regard to their entire medical history – rather, the patient has no privilege with regard to physician-patient or psychotherapist-patient communications only for "those medical conditions the patient-litigant has disclose[d] . . . by bringing an action in which they are in issue." *Britt*, 20 Cal. 3d at 863–64 (alterations in original). Even if a waiver is found, "[t]he scope of either a statutory or implied waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver." *Transamerica Title Ins. Co. v. Superior Ct.*, 188 Cal. App. 3d 1047, 1052 (1987). Contrary to Sunbelt's broad assertions as to the scope of any alleged

1   waiver without temporal or subject matter limits, a waiver (even if found) does not waive privilege

2   "as to all otherwise protected communication during [the party's] lifetime." *Jones v. Superior Ct.*,

3   119 Cal. App. 3d at 546–47.

4         Fundamentally, at best Sunbelt has merely demonstrated that Plaintiffs disclosed in

5   discovery the existence of R.J.'s medical or psychiatric treatment, the existence of some preliminary

6   diagnoses and some medications – all of which is no more information than would be provided in a

7   privilege log of withheld documents, and thus does not constitute a waiver. "Privileged

8   communications do not become discoverable simply because they are related to issues raised in the

9   litigation." *Transamerica Title*, 188 Cal. App. 3d at 1052–53. As the party arguing waiver of

10   privilege, Defendants have not met its burden to demonstrate a waiver reaching the actual privileged

11   physician-patient or psychotherapist-patient communications of R.J.

12   

13       **D.**    **Authorizations for Release of Medical Records**

14         Defendants finally request that this Court issue an Order to "Plaintiffs to withdraw their

15   objections to the Koinonia, Seneca and Kaiser subpoenas, and order R.J. and/or his mother to sign

16   the Kaiser authorization for release of records." [Dkt. 89 at 4 (citing *Miranda v. 21st Century Ins.*

17   *Co.*, 117 Cal. App. 4th 913, 919 (2004)]. For the same reasons the Court finds that the subpoenas

18   are legally improper under Fed. R. Civ. P. 26(b) and that the applicable privileges have not been

19   waived as discussed herein, the Court finds that Defendants have failed to meet their burden to

20   demonstrate that R.J. or GAL Reddic should be ordered to sign authorizations for Kaiser to release

21   or produce all of R.J.'s medical and psychiatric records to Defendants in response to the subpoenas

22   (or otherwise).

23   

24                       **CONCLUSION**

25         In light of the foregoing analysis, the Court finds that the three subpoenas at issue (directed

26   to Koinonia, Seneca, and Kaiser) are hereby ordered quashed and modified pursuant to Fed. R. Civ.

27   P. 45(d) because they "require[] disclosure of privileged or other matter" and "no exception or

28   waiver applies" with respect to such privileges. The Court further finds that the three subpoenas at

United States District Court
Northern District of California

1   issue are unenforceable and legally improper in that they seek discovery outside the proper scope of

2   discovery pursuant to Fed. R. Civ. P. 26(b), and more specifically they seek privileged materials

3   (where the privileges have not been waived and no exception to privilege applies) under California

4   law, they seek materials which are not shown to be relevant, and they seek discovery which is not

5   proportional to the needs of the case.

6          Because this dispute was presented to the Court via a Joint Discovery Letter, [Dkt. 89], the

7   Court hereby **DENIES-IN-PART** Sunbelt's motion to compel Koinonia, Seneca, and Kaiser to

8   produce documents in response to the three subpoenas and **GRANTS-IN-PART** Plaintiffs'

9   reciprocal motion for a protective order regarding the three subpoenas.

10         To the extent the subpoenas seek any documents relating to R.J.'s **non-psychiatric** medical

11   treatment/diagnoses or any substance abuse, addiction, or drug use, the Court **DENIES** Sunbelt's

12   motion to that extent, **SUSTAINS** Plaintiffs' objections to that extent, **GRANTS** Plaintiffs' motion

13   for protective order to that extent, and the subpoenas are hereby **ORDERED** quashed to that extent,

14   because they seek discovery which is not relevant, not proportional to the needs of the case, and

15   seek privileged materials for which no privileges have been waived.

16         As discussed herein, the subpoenas to both Koinonia and Kaiser are further found to seek

17   discovery outside the bounds of reasonable discovery under Fed. R. Civ. P. 26(b) for failure to

18   provide any evidence linking relevant disclosures of information or documents from either entity

19   justifying discovery directed to either. On that basis and the other findings herein, the Court hereby

20   quashes those subpoenas in their entirety.

21         Pursuant to Fed. R. Civ. P. 45(d) and in light of the analysis herein, the Court hereby

22   **MODIFIES** the subpoena to Seneca as follows:

23         In response to its subpoena, Seneca shall perform a good faith, reasonable search for and

24   produce (if any exist) only **nonprivileged documents** in their custody and control which expressly

25   discuss R.J.'s psychiatric diagnosis for "Unspecified Schizophrenia Spectrum and Other Psychotic

26   Disorder" under DSM-5 Code 298.9 (F29), and temporally limited to documents dated from

27   September 5, 2018, to September 5, 2020.

28         Because the privileges belong to R.J., Seneca and Plaintiffs shall coordinate in the search for

and review of any documents found in response to the subpoena as modified herein.  If, after such search and review, Seneca and/or Plaintiffs contend that all such documents are privileged on the grounds of the physician-patient privilege, the psychotherapist privilege, R.J.'s constitutional rights to privacy, or any other asserted privilege, then no such documents shall be produced.  In that case, Plaintiffs shall prepare a privilege log of all withheld documents and serve the privilege log on Defendants promptly after review and no later than thirty (30) days from the date of this Order (which deadline the parties can extend by mutual and reasonable agreement).

If after review of the documents collected after the search, Seneca and Plaintiffs determine that there exist some non-privileged documents responsive to the topic of the subpoena as modified herein regarding R.J.'s diagnosis, such documents shall be produced promptly after such review is completed in a manner consistent with the confidentiality and Protective Order provisions herein. While the Court is cognizant that there may exist no such non-privileged documents, until a search and review is conducted, there is no way to know at this stage whether any exist or not.

In order to minimize disputes over privilege and waiver issues, the Court hereby further **ORDERS** the Parties to employ the following procedures for privilege waiver disputes:  If, after production of any documents from Seneca or from any other source, Defendants contend that such production of any specified documents constitutes a waiver of any applicable privileges, then such produced documents shall be deemed to have been inadvertently produced and should not have been produced in the first instance, and no waiver shall be found.  Accordingly, if Defendants argue waiver of privilege based on any further produced documents, Plaintiffs shall promptly serve a "Clawback Notice" to Defendants which shall include (i) the bates range of the documents or materials at issue, (ii) a privilege log listing the document(s) or item(s) produced, and (iii) a new copy of the document(s) or material(s) (utilizing the same bates number as the originally produced document(s) or material(s)) with the privileged or protected material redacted (if the parties agree that only a portion of the document contains privileged or otherwise protected material).  If Defendants contend that waiver occurred because the entire document is privileged or otherwise protected, then Plaintiffs shall provide a slip sheet noting that the entire document is being withheld to replace the clawed back document.  Upon receipt of a Clawback Notice, all such documents or

United States District Court
Northern District of California

other materials or information identified therein, and all copies thereof (including transcriptions, notes, or other documents which extract, memorialize, or copy information from any such clawed back documents), shall be promptly collected by Defendants and their counsel (and those under their control), and those copies shall be promptly sequestered and either returned to Plaintiffs or destroyed by Defendants' counsel, who shall serve promptly thereafter a certificate of destruction signed under oath by counsel for Defendants.  No party shall use such clawed back document, material, or information therein for any purpose, until further Order of the Court.  Defendants shall attempt, in good faith, to retrieve, sequester, and either return or destroy all copies of the clawed back documents in electronic format promptly after receiving a Clawback Notice.

Defendants may challenge an assertion of privilege with respect to documents listed on Plaintiffs' privilege log.  The Parties shall follow the Court's Standing Order for Discovery and the dispute resolution procedures therein for raising any such challenges with the Court, if the Parties are unable to resolve any such disputes directly.

As modified herein, the subpoena to Seneca is directed to an appropriate scope of non-privileged discovery as to relevant items and proportional to the needs of the case.  Fed. R. Civ. P. 26; Fed. R. Civ. P. 45(d).  The scope of discovery as modified herein is now appropriately proportional and directed to R.J.'s psychiatric diagnosis mentioned in the one document produced which mentions that diagnosis, thus addressing Sunbelt's asserted need for relevant discovery as to R.J.'s psychological conditions before and after the accident leading to decedent's death.  [Dkt. 89 at 4].

Counsel for the parties and for Seneca shall meet and confer promptly and discuss in good faith regarding a reasonable schedule for the substantial completion of collection, review, and (if any are to be produced) production of documents in response to the subpoenas as modified and for the service of privilege logs, in light of the discovery cut-off in this action (whether as proposed by the parties in their recent Stipulation, [Dkt. 103], or as otherwise set by the Court).  The Parties shall promptly provide to Seneca and its counsel a copy of this Order, who shall treat this Order as confidential.

Because of the nature of the medical/psychiatric documents potentially at issue, the fact that

1    R.J. is a minor, and the apparent lack of a Protective Order in this action, the Court hereby **ORDERS**

2    that the Parties to this action comply with Fed. R. Civ. P. 5.2(a) going forward for all filings in this

3    case.[3]

4         Further, the Court hereby **ORDERS** that the Parties promptly meet and confer to discuss

5    preparation and filing of a Stipulated Protective Order to address ongoing discovery and the

6    confidential treatment and handling, CONFIDENTIAL-designations, and related procedures for

7    production (including provisions regarding applicable privileges and any issues involving minors)

8    for private or otherwise confidential documents, information, and any other materials produced by

9    Seneca or any other parties in this matter.  Within thirty (30) days of the date of entry of this Order,

10   the Parties shall file a Joint Proposed Stipulated Protective Order if they are able to reach agreement.

11   If the Parties are unable to reach agreement, on or before such deadline, they shall instead file a joint

12   brief, no longer than four pages evenly divided between the Parties, explaining their positions on

13   areas of disagreement and attaching a Proposed Protective Order which sets forth in plain text those

14   areas on which they have no disputes and sets forth their respective proposed alternate language for

15   each area of disagreement.  The Court will then rule on any such disagreements and issue a final

16   Protective Order for proper handling of the confidential materials in discovery in this matter.  Until

17   entry of a Stipulated Protective Order in this matter, the Parties shall comply with the Court's Model

18   Stipulated Protective Order (available on the Court's website) with regard to any confidential

19   documents, information, and any other materials (including testimony) produced in discovery in this

20   matter, particularly with regard to any minors and any medical, psychiatric, or other documents

21   implicating any privileges or any asserted privacy rights in this case (and any subsequent testimony

22   relating to the same).

23        In their completion of discovery in this matter and pursuant to this Order, counsel for the

---

[3] The Court notes that several of the Parties' previous filings in this matter, including the joint discovery letter briefing and supporting exhibits, violated Fed. R. Civ. P. 5.2(a) by referring to co-plaintiffs R.J. and J.J by their full names.  On August 2, 2023, this Court ordered the Parties to confer and submit proposed redacted versions of the nine docket entries at issue, pursuant to the applicable provisions of Fed. R. Civ. P. 5.2.  Dkt. 58.  The Parties did not submit the corrected redacted versions of those docket entries until September 20, 2023, which delayed the Court's issuance of this Order.

United States District Court
Northern District of California

Parties are encouraged to review the Court's Guidelines for Professional Conduct at Section 9 on Discovery, this Court's Discovery Standing Order, and the Advisory Committee Notes to the 2015 Amendments of Fed. R. Civ. P. 1 and 26 ("It is expected that discovery will be effectively managed by the parties in many cases").

**IT IS SO ORDERED.**

Dated:  September 22, 2023

PETER H. KANG
United States Magistrate Judge